PEOPLE v ARTERBERRY

Docket No. 79382. Argued January 6, 1988 (Calendar No. 1). Decided
September 27, 1988.

Richard D. Arterberry was charged in the 36th District Court
with five counts of possession of a controlled substance with
intent to deliver. At the preliminary hearing, the court, Long-
worth D. Quinn, J., granted the defendant's motion to dismiss,
finding that the warrant to search a specific premises and a
specific person for heroin and other controlled substances did
not authorize the search of other unnamed persons on the
premises, including the defendant, and that the search which
uncovered a key in the defendant's pocket, which fit a pad-
locked toolbox that already had been opened and found to
contain controlled substances, exceeded the scope of the war-
rant. The Recorder's Court of Detroit, Clarice Jobes, J., af-
firmed. The Court of Appeals, HOLBROOK, JR., P.J., and BURNS
and W. J. CAPRATHE, JJ., affirmed (Docket No. 79424). The
people appeal.

In a unanimous opinion by Justice LEVIN, the Supreme Court
*held:*

The police acted properly in searching the occupants of the
residence, whom they had probable cause to arrest and whom
they then could have searched incident to arrest, for the key.

1. The police acted within the scope of the warrant when
they opened the toolbox containing the controlled substances.
Upon discovering the controlled substances, the police had
probable cause to arrest all seven occupants for loitering in a
place of illegal occupation or business. The police reasonably
could have believed that the seven occupants of the private
residence knew that the residence was being operated as a site
for the distribution of controlled substances. Although the
officers did not assert and may not have had in mind the
offense of loitering in a place of illegal occupation or business

REFERENCES

Am Jur 2d, Arrest §§ 44 *et seq.*

Am Jur 2d, Searches and Seizures §§ 35 *et seq.*

Lawfulness of nonconsensual search and seizure without warrant,
prior to arrest. 89 ALR2d 715.

when they searched the defendant and the other occupants, the fact that an officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.

2. Since the officers had probable cause to arrest the defendant and the other occupants, the search was proper: had the occupants been arrested, they could have then been searched incident to the arrest. The validity of the search is not negated by the failure of the officers to arrest the remaining occupants. Where officers have probable cause to arrest a group of persons and, instead of arresting them all, search them and then arrest only some of the group, they act properly.

Reversed and remanded.

154 Mich App 1; 397 NW2d 198 (1986).

SEARCHES AND SEIZURES — PRIOR TO ARREST — PROBABLE CAUSE TO ARREST.

The discovery of controlled substances pursuant to a warrant to search a private residence provided probable cause to arrest the occupants of the residence, and the search of an occupant prior to arrest was proper because the occupant could have been searched incident to arrest (US Const, Am IV).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

LEVIN, J. Detroit police officers, acting with an informant, purchased heroin at a residence suspected of serving as a drug distribution site. The same day, during a thirty-minute period of surveillance, police observed seven persons make short visits to the site. On the basis of this information, the police the next day obtained a search warrant authorizing them to search the residence and "Doug," the man who had sold the heroin.

The police knocked on the door and announced

themselves. They heard someone running away and forced the door open. Inside they found seven persons, who were subjected to a *Terry* weapons patdown. Search of the site disclosed a locked toolbox. The police forced the box open and discov-ered inside a quantity of controlled substances. The police then searched the occupants for the key to the box, finding it in Arterberry's possession. Arterberry was arrested, and the other six occupants were apparently released.

Arterberry was charged with possession with intent to deliver various controlled substances. At Arterberry's preliminary examination, the district judge granted his motion to dismiss the charges on the basis that the search of his person for the key exceeded the scope of the warrant. The Detroit Recorder's Court and the Court of Appeals affirmed. We reverse and remand for trial.

I

The police acted within the scope of the warrant when they opened the toolbox containing the controlled substances. Upon discovering the controlled substances, the police had probable cause to arrest all seven occupants for loitering in a place of illegal occupation or business.[1] The police could reasonably have believed[2] that the seven occupants of this private residence knew that the residence was being operated as a site for the distribution of controlled substances.[3]

---

[1] MCL 750.167(j); MSA 28.364(j). See also *People v Morris,* 66 Mich App 514; 239 NW2d 649 (1976).

[2] See *Hammitt v Straley,* 338 Mich 587; 61 NW2d 641 (1953), and the cases quoted therein.

[3] While the information available—that the residence was being operated as an illegal drug distribution site, that controlled substances were found in the residence, and that at least one occupant ran from the door when the police announced themselves—consti-

To be sure, the officers did not assert and may not have had in mind the offense of loitering in a place of illegal occupation or business when they searched Arterberry and the other occupants. The United States Supreme Court has said, however:

> [T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. [*Scott v United States,* 436 US 128, 138; 98 S Ct 1717; 56 L Ed 2d 168 (1978).]

Since the officers had probable cause to arrest Arterberry and the other occupants, the search was proper: had the occupants been arrested, they could have then been searched incident to the arrest.[4] The validity of the search is not negated by the failure of the officers to arrest the occupants. Where officers have probable cause to arrest a group of persons and, instead of arresting them all, search them and then arrest only some of the group, they act properly. Those searched could have been arrested and then searched incident to the arrest. As explained in *Peters v New York,* 392 US 40, 77; 88 S Ct 1889; 20 L Ed 2d 917 (1968) (Harlan, J., concurring):

> If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is *no* case in which a defendant may validly say, "Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid

tuted probable cause to arrest the occupants for loitering in a place of illegal occupation or business, this information alone might be insufficient to convict the occupants of the offense.

[4] *People v Chapman,* 425 Mich 245; 387 NW2d 835 (1986).

because he did not in fact arrest me until afterwards." [Emphasis in the original.][5]

The police acted properly in searching the seven occupants for the key.

## II

The Recorder's Court and the Court of Appeals relied on the United States Supreme Court's decision in *Ybarra v Illinois,* 444 US 85; 100 S Ct 338; 62 L Ed 2d 238 (1979), in affirming the district judge's dismissal of the charges. In *Ybarra,* on the basis of the information that a bartender at a public bar possessed heroin, the police obtained a warrant permitting them to search the bartender, identified as "Greg," and the premises of the bar. The police searched "Greg" and the bar and conducted a *Terry* weapons patdown of everyone else in the bar. The search of the bar and of "Greg" did not disclose any illegal substances. The officers then searched one of the patrons, Ybarra, again, this time finding heroin in a cigarette packet.

---

[5] The California Supreme Court similarly declared in *People v Simon,* 45 Cal 2d 645, 648; 290 P2d 531 (1955):

> Thus, if the officer is entitled to make an arrest on the basis of information available to him before he searches, and as an incident to that arrest is entitled to make a reasonable search of the person arrested . . ., there is nothing unreasonable in his conduct if he makes the search before instead of after the arrest. In fact, if the person searched is innocent and the search convinces the officer that his reasonable belief to the contrary is erroneous, it is to the advantage of the person searched not to be arrested. On the other hand, if he is not innocent or the search does not establish his innocence, the security of his persons, house, papers, or effects suffers no more from a search preceding his arrest than it would from the same search following it.

See also *People v Cook,* 153 Mich App 89, 92; 395 NW2d 16 (1986); see, generally, 2 LaFave, Search and Seizure (2d ed), §§ 5.4(a)-(b), pp 515-527.

There was no basis for this search[6] other than Ybarra's presence in the bar. There was "no reason to believe that [Ybarra] had committed, was committing, or was about to commit any offense under state or federal law." *Ybarra,* 444 US 91. The Court held the search invalid for lack of probable cause.

In contrast to the instant case, the police in *Ybarra* did not have probable cause to arrest the defendant before engaging in the challenged search. In *Ybarra,* the police did not, while searching pursuant to the warrant, discover controlled substances. In *Ybarra,* the police had no information that the bar itself was a dope house. In *Ybarra,* the site of the search was a public bar open to everyone, not a restricted-entry private residence.[7] In *Ybarra,* no one ran away when the police announced themselves. In *Ybarra,* there was no reason to believe that the patrons of the bar were involved in criminal activity.

In the instant case, because the police had probable cause to arrest all the occupants, who could then have been searched incident to arrest, they acted properly in searching Arterberry for the key.

Reversed and remanded for trial.

RILEY, C.J., and BRICKLEY, CAVANAGH, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with LEVIN, J.

---

[6] Nor, because there was no reasonable belief that the patrons were armed and presently dangerous, was there a basis for the *Terry* weapons patdown. *Ybarra,* 444 US 92.

[7] Professor LaFave observed:

Without suggesting that the probable cause required by *Ybarra* is inevitably present when the warrant *is* for private premises and the requisite notice is given prior to entry, it is fair to say that such a case does necessitate a somewhat different assessment than was permissible on the facts of *Ybarra.* [2 LaFave, Search and Seizure (2d ed), § 4.9(c), p 296. Emphasis in the original.]