# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SCOTT ANTHONY MORRIS,

        Defendant-Appellant.

UNPUBLISHED
June 16, 2015

No. 320694
Wayne Circuit Court
LC No. 13-007806-FH

Before: SAAD, P.J., and M. J. KELLY and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of felon in possession of a firearm (felon-in-possession), MCL 750.224f, possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and carrying a concealed weapon (CCW), MCL 750.227. The trial court sentenced defendant as a fourth habitual offender, MCL 769.12, to 10 months to 5 years in prison for felon-in-possession, two years for felony-firearm, and 10 months to 5 years for CCW. We affirm.

This case arises from an incident that occurred on August 13, 2013 in Detroit. Around 11:30 p.m., Detroit Police Officers Calvin Lewis, Jelani Jones, and Donald Covington ("Covington") were on routine patrol in the area near a vacant house located at 13924 Ohio Street. Approaching the house, the officers saw Marvin Covington[1] ("Marvin") and Deon Henry in the street. Covington testified that he saw David Murray and defendant by the vacant house. Lewis testified that he leaned out his window and warned Marvin and Henry that standing in the street was "against the law and is hazardous," but that Marvin and Henry did not move. At this point, all three officers exited the vehicle.

Jones detained Marvin and Murray near the squad car. Covington followed Henry, who had begun walking away from the group. Lewis testified that defendant began walking toward the rear of the vacant house and Lewis followed. Lewis stated that he illuminated defendant with a flashlight and saw defendant reach into his right pants packet and toss what Lewis believed to be a handgun into the bushes in front of the house. Lewis testified that he then called for

---

[1] The two Covingtons are not related.

-1-

defendant to stop. According to Lewis, defendant complied and walked back toward him with his hands raised. Lewis then detained defendant and walked him back to the squad car. Covington testified that he detained Henry and also walked him back to the car.

Lewis testified that he then returned to the bushes and recovered a "380 blue-steel semi automatic" Ruger handgun containing six live rounds. He stated that he returned to the squad car and showed the firearm to the other officers. The officers then placed defendant under arrest and released Henry, Marvin, and Murray without citation. At trial, the parties stipulated that defendant was ineligible to possess a firearm due to a previous felony conviction.

While Covington and Jones largely corroborated Lewis's version of events at trial, neither officer testified that he witnessed defendant walk toward the back of the vacant house and toss a handgun or other object into the bushes. Neither Covington nor Lewis testified whether Lewis showed them the handgun. Jones stated that Lewis told him that he found a weapon and Covington stated that Lewis remained silent and "kind of gave" a "nod" at defendant, indicating that he should be arrested.

At trial, Marvin and Murray recalled the incident differently than did the officers. Murray, who owned the house next door to the aforementioned vacant, testified that on the evening in question, all four men were having a drink at his home. Toward the end of the evening, Murray walked his guests outside and all four were standing in the street, "about to disburse," when the police arrived. Marvin testified that, when the police arrived, he was standing in the street with "another individual" but that defendant was either in the driveway or on the curb. Both witnesses testified that the police immediately told all four men to "come here" and handcuffed and searched each of them. They agreed that, at some point, Henry walked away and an officer followed him. According to Marvin and Murray, once all four men were secured near the squad car, the officers searched the area around the vacant house, around Murray's house, and searched Marvin's vehicle "about four times." Marvin and Murray testified that they never saw defendant walk toward the vacant house and never saw defendant, or anyone else, with a handgun.

Defendant did not testify at trial.[2] However, as part of his motion to remand before this Court, which was denied, defendant filed an affidavit that was accepted for filing.[3] Among other things, defendant averred that he been standing on the curb when the police arrived. He denied ever walking away from the officers toward the vacant house or ever possessing or tossing a handgun. Defendant posited that he was arrested in retaliation for insulting Lewis's intelligence.

The jury convicted defendant as charged and this appeal followed.

---

[2] Henry also did not testify.

[3] *People v Morris*, unpublished order of the Court of Appeals, entered September 15, 2014 (Docket No. 320694).

Defendant argues that he was deprived of the effective assistance of counsel, identifying several instances of allegedly deficient representation.[4]

The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions. US Const Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039, 80 L Ed 2d 657 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *Swain*, 288 Mich App at 643. "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different." *Id*.

First, defendant contends that counsel was ineffective for failing to move for an evidentiary hearing on the validity of the initial police stop of Marvin and Henry.

"In order to justify an investigative stop, the police must have a particularized suspicion, based on objective observations, that the person stopped has been, is, or is about to engage in some type of criminal activity." *People v Coscarelli*, 196 Mich App 724, 727; 493 NW2d 525 (1992). "A brief detention does not violate the Fourth Amendment if the officer has a reasonably articulable suspicion that criminal activity is afoot." *People v Jenkins*, 472 Mich 26, 32; 691 NW2d 759 (2005). Whether an officer has reasonable suspicion sufficient to justify an investigatory stop is determined based on the total circumstances of the individual case. *Id*.

Defendant argues that counsel should have challenged the stop of Marvin and Henry. Defendant cites Detroit Ordinance, § 55-12-4, which prohibits pedestrians from walking in the street when a sidewalk is available. Defendant argues that because Marvin and Henry were standing, not walking, in the street, the police were without probable cause to stop Marvin and Henry and, had they not stopped those two individuals, they would not have recovered the subject firearm from the bushes. However, defendant fails to acknowledge that the Fourth Amendment right against unreasonable search and seizure is personal and may not be invoked on behalf of third parties. See *People v Zahn*, 234 Mich App 438, 446; 594 NW2d 120 (1999). In other words, defendant did not have standing to challenge the stop of Marvin and Henry. *Id*. Thus, any motion by counsel to that effect would have failed, and counsel is not ineffective for failing to make meritless or futile motions. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).[5]

---

[4] "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

[5] Moreover, MCL 257.676b provides that an individual commits a civil infraction if he blocks or obstructs the flow of traffic on a public street with his person. This statute renders without merit defendant's argument that the stop of Marvin and Henry was without probable cause merely

Although not argued by defendant, we note that counsel was not ineffective for failing to challenge the stop of defendant himself. In an affidavit filed in this Court, defendant avers that he was never near the bushes and was stopped and handcuffed with the other men near the street soon after the police arrived. Assuming, arguendo, that defendant's version of events is true *and* that this stop was unconstitutional, defendant is not entitled to relief because the remedy for an unconstitutional stop is the suppression of evidence "obtained *as a result*[.]" *People v Chambers*, 195 Mich App 118, 121; 489 NW2d 168 (1992) (emphasis added). It is undisputed that the subject firearm was recovered from nearby bushes and not from defendant's person. Thus, the firearm was not obtained as a result of any unconstitutional stop of defendant. Accordingly, even if counsel had successfully challenged the stop of defendant, the firearm would not have been suppressed. In the absence of the ability to suppress the firearm, defendant cannot establish a reasonable probability that, if counsel had challenged the stop, the outcome of the trial would have been different. *Swain*, 288 Mich App at 643.

Second, defendant faults counsel for failing to request an adjournment for fingerprint testing upon learning that the gun recovered from the scene was not tested for prints. Decisions concerning what evidence to present are presumptively matters of trial strategy not to be reassessed on appeal. *People v Payne*, 285 Mich App 181, 189-190; 774 NW2d 714 (2009). That presumption controls here. Defendant's counsel may not have wanted to delay the trial for fingerprint testing because of the risk that the test results would tie defendant to the firearm. See *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012) (reviewing court must "affirmatively entertain" possible reasons for trial counsel's actions.) Instead, counsel employed a reasonable trial strategy in citing the absence of fingerprint evidence in support of her argument that the prosecution had not sufficiently tied defendant to the firearm.

Defendant's third argument concerns an error in the police reports concerning his arrest. Lewis, Jones and Covington testified that they had mistakenly named Wisconsin Street as the location of the incident rather than Ohio Street. Defendant argues that counsel was ineffective for failing to call the prosecutor as a witness to determine whether the prosecutor had informed the police witnesses about the incorrect street name on the morning of trial. Defendant's suspicion is unsupported and contradicted by the record. Indeed, at the preliminary examination, defendant was represented by a different attorney who suggested that Lewis had misidentified the street. Although Jones could not recall when he learned of the mistake, Lewis and Covington testified that they discovered the error on their own when they went back to the arrest location on the day after the preliminary examination and realized that they had misidentified the street. In light of this testimony, defense counsel had no reason to believe that the prosecutor had informed Lewis and Covington of the error, and she did not act unreasonably in declining to call the prosecutor as a witness. Moreover, defendant has failed to demonstrate a reasonable probability that, but for counsel's alleged failure in the regard, the outcome of the trial would have been different.

---

because the two were not walking in the street. See *People v Chapo*, 283 Mich App 360, 366; 770 NW2d 68 (2009) ("A police officer who witnesses a civil infraction may stop and temporarily detain the offender").

Defendant's remaining ineffective assistance claims, that his trial counsel unreasonably failed to introduce evidence concerning: (1) defendant's left-handedness; (2) defendant's insult towards Lewis shortly before his arrest; (3) Lewis's alleged comment that he arrested "a m-----f----- with a gun every day;" and (4) Lewis's arrest records, which may or may not have shown a pattern of arrests for unlawful firearm possession, have no factual basis in the lower court record and are based solely on defendant's affidavit filed in this Court. As noted, decisions regarding the evidence to present and how to question witnesses are presumed to be matters of trial strategy, *Payne*, 285 Mich App at 189-190, and defendant has failed to overcome that presumption in regard to these alleged errors. Defendant has also failed to demonstrate a reasonable probability that, if his counsel had proceeded as he alleges she should have, the outcome of the trial would have been different.

Accordingly, defendant is not entitled to relief on his claims of ineffective assistance of counsel.

Defendant next argues that his convictions were against the great weight of the evidence.[6] In reviewing such a claim, we must determine "whether the evidence preponderances so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Musser*, 259 Mich App at 218-219. Conflicting testimony alone, even when impeached, does not typically warrant reversal. *People v Roper*, 286 Mich App 77, 89; 777 NW2d 483 (2009); *Musser*, 259 Mich App at 219. Rather, the jury's verdict must be deferred to "unless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities[.]" *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998) (citation and quotation omitted).[7]

Defendant argues that the guilty verdicts are against the great weight of the evidence for two reasons. First, defendant is left-handed. To defendant, this constitutes indisputable proof that he would not have carried a handgun on the right side of his pants, as Lewis testified. Even assuming defendant is left-handed, there is no evidence in the record to indicate that it would be physically impossible for a left-handed individual to carry a firearm in the right side of his pants or handle it with his right hand. Second, defendant asserts that Lewis should not have been

---

[6] We review this unpreserved argument for plain error affecting substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

[7] Each of defendant's convictions requires a showing that he possessed a firearm. Felony-firearm requires: (1) that the defendant carried or possessed a firearm, (2) during the commission or attempted commission of a felony. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011); see also MCL 750.227b. The elements of felon in possession of a firearm are: (1) that defendant possessed a firearm; (2) the defendant was previously convicted of a felony; and (3) his right to possess a firearm has not been restored. *People v Perkins*, 473 Mich 626, 630-631; 703 NW2d 448 (2005); see also MCL 750.224f. CCW requires proof that defendant knowingly possessed a concealed weapon without a license. *People v Hernandez-Garcia*, 477 Mich 1039, 1049 n 1; 728 NW2d 406 (2007); see also MCL 750.227.

believed, as he was the only witness among five to have seen defendant pull a firearm from his right side and toss it into the bushes. Defendant's assertion is true—none of the other witnesses testified that they saw defendant walk toward the back of the vacant house and/or toss an object into the bushes. However, Lewis did testify to that effect and determinations of witness credibility and the weight given to evidence are reserved for the jury. *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). To the extent that there was testimony contradicting Lewis's version of events, it did not deprive his testimony of all probative value or render it contradictory to indisputable physical facts or realities. *Lemmon*, 456 Mich at 647. Accordingly, defendant's convictions were not against the great weight of the evidence.

Defendant also asserts that the evidence was insufficient to demonstrate that he constructively possessed the recovered handgun.[8] We review the evidence in a light most favorable to the prosecution to determine whether the jury could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Harverson*, 291 Mich App at 175-176.

Lewis's testimony that defendant threw an object later determined to be a handgun into the bushes was sufficient to support a finding, beyond a reasonable doubt, that defendant possessed a firearm. See *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007) (circumstantial evidence and the reasonable inferences drawn therefrom are sufficient to prove the elements of an offense). The prosecution was not required to offer fingerprint evidence or multiple witnesses to defendant's crime. See *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Evidentiary conflicts are for the finder of fact to resolve and the jury was free to credit Lewis's testimony over Marvin's and Murray's claims that defendant did not have a handgun. *Unger*, 278 Mich App at 222. The jury was aware that Lewis was the only person to see defendant in possession of a firearm and that the police did not perform fingerprint tests. Nevertheless, it could properly treat Lewis's testimony as determinative of defendant's guilt. See *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999) (the finder of fact is "free to believe or disbelieve, in whole or in part, any of the evidence presented."). Accordingly, defendant's convictions were supported by sufficient evidence.

Finally, defendant argues that his cumulative convictions and sentences for felon-in-possession and felony-firearm violate the state and federal constitutional prohibitions against double jeopardy.[9] However, the Supreme Court expressly rejected this argument in *People v Calloway*, 469 Mich 448, 452; 671 NW2d 733 (2003). We are bound by *Calloway* and,

---

[8] A challenge to the sufficiency of the evidence is reviewed de novo. *People v Harverson*, 291 Mich App 171, 175-176; 804 NW2d 757 (2010).

[9] "A double jeopardy challenge presents a question of law that" is reviewed de novo. *People v Herron*, 464 Mich 593, 599; 628 NW2d 528 (2001).

accordingly, must reject defendant's arguments. See *State Treasurer v Sprague*, 284 Mich App 235, 242; 772 NW2d 452 (2009).

Affirmed.

/s/ Henry William Saad
/s/ Michael J. Kelly
/s/ Douglas B. Shapiro